## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA JACKSONVILLE DIVISION

EMMANUEL VELAZQUEZ
DOC# C02674,
      **Plaintiff,**

v.                              No. 3:24-CV-918-MMH-MCR

SERGEANT ALLEN, ET AL.,

      **Defendants.**

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Thomas D. Allen**, **Michael Walin**, and **Patrick A. Williams** ("Defendants")
hereby move for summary judgment in their favor pursuant to Rule 56, Fed. R. Civ.
P., for the following reasons: (I) Plaintiff cannot prove a constitutional violation, (II)
Plaintiff is not entitled to compensatory damages, and (III) Plaintiff's request for
punitive damages is statutorily barred.

## PROCEDURAL HISTORY

Emmanuel Velazquez ("Plaintiff") is a prisoner in the custody of the Florida
Department of Corrections ("FDC") currently housed at Suwannee Correctional
Institution. The operative complaint is Plaintiff's First Amended Complaint. Doc. 5.

1

The Plaintiff alleges violations of Plaintiff's Eighth Amendment rights and has abandoned all claims and relief related to alleged denial of medical care. Doc.10.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on September 10, 2022, at about 12:00 AM, he was taken to the Florida State Prison infirmary shower by Defendants Allen, Williams, and "Wallace" (Walins). Doc. 5 at 6. He alleges that all three defendants attacked him: Allen struck his face, Walins strangled him until he passed out, and Williams fractured his ribs with a closed fist punch. *Id*. He alleges that he was struck "behind his head" with an unknown object by Walins, and that he (the plaintiff) was unconscious through most of the beating. *Id*. He says he suffered contusions and swelling on the back of his head, bruising and abrasions on his neck, one or more lower right ribs fractured or dislocated, and broken teeth. *Id*. Plaintiff also alleges that after the events, he was threatened by Williams to "keep quiet", and that he was denied medical attention. *Id*. Plaintiff is seeking compensatory and punitive damages for physical injuries, mental anguish, and emotional distress. *Id*.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

On September 9, 2022, at approximately 10:38pm, Sergeant Michael Walin observed Plaintiff unresponsive in his cell B1206S, which housed the Plaintiff alone. *See* Exhibit A. Walin then requested medical staff, an officer in charge, and the Alpha response team to be en-route for Plaintiff's medical emergency. *Id*. While

handheld video was recorded, Walin breached the cell door with the Alpha response team, which included Defendant Allen and other officers. *Id*. Once Plaintiff was fully restrained, Plaintiff was escorted to medical where he was assessed. *Id*. Plaintiff was sent to the shower because he was covered in blood, but medical personnel could not identify where the blood was coming from. *See* Exhibit B at FDC 000934. After the shower, Plaintiff returned to medical. *Id*. *See also* Exhibit C at 17, lines 22-25. Plaintiff was found to have four self-inflicted puncture wounds under his arm, with no other injuries documented or claimed. *See* Exhibit B at FDC 000934. After this examination, Plaintiff was returned to confinement. *Id*. at FDC 000935. Plaintiff was escorted to his cell without further incident. *See* Exhibit A. At no time during the camera recording[1] does Plaintiff appear to be under duress. *See* Exhibit A at FDC 000892 - FDC 000893. Four days later, on September 13, 2022, Plaintiff made a sick-call to medical and was evaluated for what he claimed was a physical altercation. *See* Exhibit B at FDC 000929. Plaintiff complained of headache, rib pain, bruised eyes, facial swelling, shortness of breath, and right hip pain. *Id*. at FDC 000928. The medical provider's evaluation found that Plaintiff had no swelling or bruising to face, ribs, or abdomen, no redness to the area where he said he had pain, and no deformity present anywhere. *Id*. at FDC 000929. Mr. Velazquez was seen

---

[1] The recorded video referenced here was produced at the time of the incident and later reviewed by the Inspector General in connection with their investigation of the allegations made in this Complaint. *See* Exhibit E. The Office of the Attorney General has requested this video and learned that it was not retained by the Inspector General or FDC after the investigation concluded that there was no evidence to substantiate the allegations. *See* Exhibit F.

again by medical on September 29, 2022. *Id.* at FDC 000915. The ER form documented that the time of the occurrence was September 9, 2022, the date of the alleged incidents, and Plaintiff alleged he suffered staff abuse. *Id.* Plaintiff refused vital signs and assessment, but the form documented that he arrived ambulatory, was alert and oriented x 4. *Id.* Plaintiff was discharged to confinement without treatment. *Id.* There are no other sick-calls for any injury related to this alleged incident. *See* Exhibit B.

## MEMORANDUM OF LAW

### Standard for Summary Judgment

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id.*

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine, and the nonmoving party must

show more than a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.' *Cuesta v. School Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, summary judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion, the non-movant's evidentiary material must consist of

more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, cannot be based merely on "information and belief" or unsupported factual allegations. *Earley*, 907 F.2d at 1081. Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying Celotex read Celotex "as simply allowing otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed.Appx. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not

be used to create a genuine issue of material fact for trial" that would defeat a Motion for summary judgment. *McMillian*, 88 F.3d at 1584.

## I.     Plaintiff cannot prove a constitutional violation by Defendants.

Defendants are entitled to summary judgment because Plaintiff cannot prove Defendanta committed an Eighth Amendment violation.

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force. *Thomas v. Bryant*, 614 F.3d 1288, 1305 (11th Cir. 2010) (reviewing categories of claims under the Eighth Amendment). An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." Id. (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (other citations omitted)).  This subjective showing requires a plaintiff to show: (1) the defendants' subjective knowledge of the risk and (2) their disregard of the risk (3) and, that defendants acted with "more than gross negligence." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005); *Ireland v. Prummell*, 53 F.4th 1274, 1293 (11th Cir. 2022).

It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes

cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations omitted).

Here, the first factor, the extent of the injury, is not met. Plaintiff was seen by medical after returning from the shower on the night of the alleged incident and was not found to have injury of any kind, other than four self-inflicted puncture wounds. *See* Exhibit B at FDC 000934. At the sick-call he requested in relation to the incident,

on September 13, 2022, the medical provider's evaluation found that Plaintiff had no swelling or bruising to face, ribs, or abdomen, no redness to the area where he said he had pain, and no deformity present anywhere. *Id*. at FDC 000929. If the Plaintiff had been injured in the shower, especially to the extent he claims, medical staff would have seen and documented those injuries. Plaintiff surely would have requested a sick-call earlier than four days after the incident.

In regard to the Plaintiff's allegations of chipped teeth from the incident, again, there is no proof of injury. Plaintiff alleges in the operative Complaint that the alleged incident left him with broken teeth. Doc. 5 at 6. However, this injury is not noted in the initial medical assessment. *See* Exhibit B at FDC 000934. Additionally, the Plaintiff does not mention this injury in the later sick-call. *See* Exhibit B at FDC 000929. The Plaintiff also fails to claim this injury in either his response to interrogatories or his deposition. *See* Exhibit D, and Exhibit C at 17, lines 13-19.

The second and third factors, the need for application of force and the amount of force used, are also in the Defendants' favor, supported by the evidence. The incident report clearly states that the Plaintiff was unresponsive and needed transport to the infirmary. *See* Exhibit A at 1. The report is also clear that only the least amount of force was used, and that the Plaintiff was escorted back to his cell without further incident. *Id*. In the Plaintiff's deposition, he said he had complications with his blood that made it necessary for his vitals to be checked. *See* Exhibit C at 11, lines 10-16.

Then he refers to sometimes feeling weak, or fainting. *See* Exhibit C at 11, lines 19-22. He mentions being taken to the infirmary several times. *See* Exhibit C at 10, lines 19-20; at 11, lines 2-3; at 12, lines 7-8. Therefore, the need for a low level of force was present and there is no evidence officers used any more force than necessary.

There is no evidence that the fourth factor, any efforts made to temper the severity of a forceful response, is applicable. The incident report states that the Incident Type was "07A GENERAL MEDICAL". *See* Exhibit E at 1. As this was not a use of force event, but a medical emergency, there was no forceful response with escalating severity.

The fifth factor, the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, is applicable in that officers rightly perceived Plaintiff's medical emergency and responded appropriately. *See* Exhibit A at 1; *See also* Exhibit B at 2, section 9. The evidence shows that there was a threat to Plaintiff's safety, and the officers responded appropriately to that threat by transporting Plaintiff to the infirmary for emergency medical assistance.

Therefore, Plaintiff cannot prove Defendants violated the Eighth Amendment, as the evidence clearly contradicts Plaintiff's version of events and Plaintiff has produced no evidence upon which a jury could reasonably find for the Plaintiff.

**II.    Plaintiff is not entitled to compensatory damages.**

Plaintiff fails to state a claim which would entitle him to any damages as he fails to state a physical injury which is greater than *de minimis*. As such, Plaintiff's request for compensatory damages must be dismissed pursuant to 42 U.S.C § 1997e(e).

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eleventh Circuit is in accord that, under 42 U.S.C. § 1997e(e), compensatory and punitive damages are unavailable absent physical injury. *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011). The physical injury requirement applies to all federal claims, including constitutional claims. *Harris v. Garner*, 216 F.3d 970, 984–85 (11th Cir. 2000).

While 42 U.S.C. § 1997e(e) does not define "physical injury," the Eleventh Circuit has held that to satisfy the statute, the physical injury must be more than minimal, but need not be significant. *Daughtry v. Moore*, Civil Action No. 08–00215–KD–C, 2009 WL 1151858, *5 (S.D. Ala. 2009) (citing *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *see also Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated, 197 F.3d 1059, reinstated in relevant part, 216 F.3d at 972 (en banc); *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003); *Oliver v. Keller*, 289

11

F.3d 623, 626-628 (9th Cir. 2002); *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997), abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

In explaining the type of injury that is not barred by 28 U.S.C. § 1997e(e), some courts have proffered the following common-sense approach; "would the injury *require* or *not require* a free world person to *visit* an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?" *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (emphasis added); *see Talley v. Johnson*, No. 4:07-CV-177, 2008 WL 2223259, *3 (M.D. Ga. 2008); *Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x. 555, 557 n.3 (11th Cir. 2014) (per curiam) (unreported op.); *Brown v. McGowan*, No: 3:13cv545/RV/EMT, 2014 WL 4538056, *7 (N.D. Fla. 2014) (same); *Kirkland v. Perkins*, No. 12–22302–CIV, 2014 WL 1333214, *13 n.7 (S.D. Fla. 2014) (same).

Additionally, the Eleventh Circuit has held that *Harris* and its progeny determined that § 1997e(e) foreclosed claims for both compensatory and punitive damages. *Al-Amin*, 637 F.3d at 1197-98; *Fraizer v. McDonough*, 264 F. App'x 812, 815 (11th Cir. 2008). Nominal damages, however, are not precluded by § 1997e(e). *Fraizer*, 264 F. App'x at 815; *Allen*, 502 F.3d at 1271, abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 283 n.3 (2011).

Plaintiff alleged in the operative complaint that he sustained contusions and swelling on the back of his head, bruising and abrasions on his neck, one or more

lower right ribs fractured or dislocated, and broken teeth. Doc. 5 at 6. Plaintiff's injuries are the definition of a *de minimis* injury. *Gensinger v. Bazzelle*, No. 3:18-cv-1628-LC/MJF, 2020 WL 5536505, at *7 (N.D. Fla. Aug. 10, 2020) (holding that minor cuts and bruises are typically *de minimis* physical injuries); *see Dixon*, 225 F. App'x at 799 (holding that mere bruising from the application of restraints is only a *de minimis* injury); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (noting that a sore, bruised ear lasting for three days was a *de minimis* injury).

According to Plaintiff's medical records, Plaintiff received no treatment for these alleged injuries at the time they were alleged to have occurred. *See* Exhibit B at 2-3. According to Plaintiff's records, Plaintiff made a second sick call request on September 13, 2022, regarding the alleged injuries, and again, no evidence of injury was found. *Id.* at 3. The only treatment given at that time was Tylenol. *Id.* Plaintiff made a third sick-call which appears to have been related to the alleged incident on September 29, 2022, but Plaintiff refused assessment and no treatment was given. *Id.* Plaintiff did not suffer any long-term injuries from the alleged incident. *Id.* Therefore, Plaintiff is not entitled to compensatory damages against Defendants because Plaintiff cannot show that any of his injuries were more than de minimis.

### III. The Plaintiff's request for punitive damages must be dismissed because they are statutorily barred.

Punitive damages are statutorily barred. "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct

the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C.

§3626(a)(1)(A). Moreover, to grant prospective relief, the Court must "fin[d] that

such relief is narrowly drawn, extends no further than necessary to correct the

violation of the Federal right, and is the least intrusive means necessary to correct

the violation of the Federal right." *Id.* Furthermore, the Court must "give substantial

weight to any adverse impact on public safety or the operation of a criminal justice

system caused by the relief." *Id.*

Section 3626(a)(1)(A) applies to punitive damages because "prospective

relief" is defined under the statute as "all relief other than compensatory monetary

damages." 18 U.S.C. §3626(g)(7); *see also Johnson v. Breeden*, 280 F.3d 1308, 1325

(11th Cir. 2002) (finding that the plain language of the definition provision is clear

and that "punitive damages are prospective relief").

As a categorical matter, punitive damages cannot satisfy the strict

requirements of section 3626(a)(1)(A). First, punitive damages are never necessary

to correct a violation of a Federal right. This is because "correction" of violation is

accomplished through compensatory damages and punitive damages are, by their

nature, never corrective.

> Although compensatory damages and punitive damages are typically
> awarded at the same time by the same decisionmaker, they serve
> distinct purposes. The former are intended to redress the concrete loss
> that the plaintiff has suffered by reason of the defendant's wrongful
> conduct. The latter, which have been described as "quasi-criminal,"
> operate as "private fines" intended to punish the defendant and to deter

future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (cleaned up).

Second, even if an award of punitive damages could be thought reasonably "necessary" to correct a legal violation, such an award could not satisfy the additional, stringent limitations imposed by the PLRA—i.e., the requirements that the relief be "narrowly drawn," "extend[] no further than necessary to correct the violation of the Federal right," and be "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1)(A) (emphases added); *see United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019) (explaining that it is a "cardinal rule" of statutory interpretation that courts try to give "effect… to every clause… of a statute") (citation and internal quotation marks omitted)). Even if deterring future violations is conceptualized as one way of correcting a violation, punitive damages are never the "narrow[est]" or "least intrusive" way of effectuating such a correction. As the Supreme Court has explained, "[d]eterrence is… an important purpose of" the tort system created by section 1983, but such deterrence primarily "operates through the mechanism of damages that are compensatory— damages grounded in determinations of plaintiffs' actual losses." *Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis in original). Similarly,

the Supreme Court has made "clear" that "nominal damages," not punitive damages, "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." *Id.* at 308 n.11. Even assuming punitive damages are also an "appropriate" means of vindicating such rights, they are not less burdensome, more narrowly tailored, or less intrusive than nominal damages.

Although the Eleventh Circuit held in *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021), that "[42 U.S.C.] §1997e(e) permits claims for punitive damages without a physical injury requirement," it expressly declined to consider whether section 3626 bars punitive damages. *Id.* at 1364 fn. 5. Because the Court did not consider the argument presented here, *Hoever* is not controlling on the issue. Moreover, in *Johnson v. Breeden*, 280 F.3d 1308, 1325-26 (11th Cir. 2002), the Eleventh Circuit interpreted section 3626(a)(1)(A) in a manner that indicates that it does not bar punitive damages.[2] However, the argument that section 3626 categorically bars punitive damages was not discussed, let alone rejected, in

---

[2] Specifically, the Court stated that section 3626's requirements "mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case. They also mean that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so." 280 F.3d at 1325 (emphases added). It further stated that "[m]any factors may enter into that determination. For example, the number of… violations an individual defendant or institution has had might affect whether punitive damages were necessary, and if so, the amount required to deter future violations." *Id.* (emphasis added). To the extent that this Court is bound by *Johnson*, the argument that section 3626 bars punitive damages is presented here to preserve the issue for appellate review.

*Johnson*. Therefore, *Johnson* is not dispositive on the issue. *See United States v. Mitchell*, 271 U.S. 9, 14 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The Circuit Courts apparently have yet to directly address whether punitive damages are barred by section 3626. *See*, *e.g.*, *Hoever*, 993 F.3d at 1364 n.5 ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the *en banc* briefing question posed to the parties.") (citation omitted); *Al-Amin v. Smith*, 637 F.3d 1192, 1199 n.10 (11th Cir. 2011) ("Since we find that § 1997e(e) prevents Al–Amin, in the absence of physical injury, from offering evidence supporting an award of punitive damages in this action, we need not consider the validity or timeliness of Defendants' alternative argument that 18 U.S.C. § 3626 prohibits punitive damage recovery as well."), overruled by *Hoever*, 993 F.3d at 1363-64; *Vaughn v. Cambria Cnty. Prison*, 709 Fed. Appx. 152, 155 n.2 (3d Cir. 2017) ("The Magistrate Judge stated that punitive damages were unavailable under 18 U.S.C. § 3626(a)(1)(A)… We offer no opinion on this issue at this time and defer

17

consideration of it in this proceeding because liability has not yet been found.")
(citation omitted); *Wilkerson v. Stalder*, 329 F.3d 431, 434 n.3 (5th Cir. 2003) ("The
district court chose to defer ruling on the prison officials' claim that the Prison
Litigation Reform Act bars the inmates' claim for punitive damages until such time
as liability is found. Therefore, this issue is not properly before the court on appeal.")
(citation omitted). Because of the apparent absence of Circuit precedent directly
addressing this argument, Defendants rely on the plain meaning of the text of section
3626.

Punitive damages are never "necessary to correct the violation of" a Federal
right because, "[i]n the strictest sense of the term, something is 'necessary' only if it
is essential." *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018) (citing Webster's Third
New International Dictionary 1510 (1993); 10 Oxford English Dictionary 275–276
(2d ed. 1989)); *see also* Necessary, Black's Law Dictionary (11th ed. 2019)
(defining necessary to mean "essential"). And the text and context of section 3626(a)
indicate that Congress intended to use the term "necessary" in the strict sense of that
word. Unlike the "necessary and proper clause" of Article I, Section 8, for example,
section 3626 uses the term "necessary" in the context of a "strict limitation[]," not a
broad authorization. *See Johnson*, 280 F.3d at 1323. Similarly, the immediately
surrounding text provides that relief is barred unless it is "narrowly drawn," "extends
no further than necessary to correct the violation of the Federal right," and is "the

least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(a)(1).

Punitive damages, however, are not even an appropriate mechanism for "correcting" a legal violation; to the extent that damages serve a "corrective" function, that is what compensatory damages are for. By definition, "compensatory damages" are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." Damages, Black's Law Dictionary (11th ed. 2019) (emphasis added). Accordingly, punitive damages are not even intended to "correct" a legal violation by making the injured party whole; still less are they an "essential" way of making the plaintiff whole.

Consistent with dictionary definitions, caselaw recognizes that punitive damages awards serve two purposes, "punishing unlawful conduct and deterring its repetition." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quotation omitted). Neither of those purposes makes punitive damages "necessary to correct" a violation of Federal law. By definition, one may "correct" a violation of law without "penalizing" past misconduct or "deterring" potential future violations. Ordinary English usage confirms that proposition. For example, one does not "correct" a future error before it happens; one seeks to deter it—i.e., to prevent it from happening in the first place. Likewise, punishment is not strictly necessary to remedy a wrong; instead, punishment serves other goals, like deterrence or

19

retribution. *Cf. Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (distinguishing between remedies that are penalties, i.e., those that seek to punish, and those that seek to "compensate[e] a victim for his loss").

Moreover, reading section 3626 to categorically bar punitive damages does not prevent the court from fully remediating ongoing violations. In many civil actions with respect to prison conditions, a plaintiff alleges that his federal rights are being violated on an ongoing basis. In those cases, prospective relief may be warranted—for example, in the form of declaratory or injunctive relief that requires prison officials to "correct" their violation by bringing their conduct into conformity with the law. As this Court has explained, albeit in the context of interpreting section 1997e(e), such relief provides a "reasonably adequate opportunity" to seek redress for constitutional violations," even if prisoners "may not recover monetary damages for such claims." *Al-Amin*, 637 F.3d at 1197 (quotation marks and citation omitted).

What is more, to clear the high bar of the PLRA, relief other than compensatory monetary damages must extend "no further than necessary to correct the violation of the Federal right of [the] particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1) (emphasis added). Punitive damages awards aimed at protecting inmates generally (e.g., through deterrence), rather than correcting the violations suffered by the particular plaintiff bringing the suit, are thus prohibited. Moreover, not only must punitive damages awards be plaintiff-specific, they must be defendant-

specific. Section 3626(a)(1) requires that they be "narrowly drawn," which means that any deterrent must be aimed at deterring the particular defendant, not the correctional facility or government in general.

Because this Court cannot find that punitive damages are necessary to correct a violation of Plaintiff's rights or are the least intrusive means necessary to do so, punitive damages are barred by section 3626(a)(1)(A). Therefore, Plaintiff's request for punitive damages must be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendants respectfully request the Court grant summary judgment in their favor.

Respectfully submitted,

**JAMES UTHMEIER**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

*/s/ Margo E.L. Byrne*
Margo E.L. Byrne
Florida Bar No. 1065738
South Carolina Bar No. 107063
Office of the Attorney General
Margo.Byrne@myfloridalegal.com

/s/ Erik Kverne

21

Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com
*Supervisor*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2025, a copy of this *Motion* was furnished by U.S. Mail to Emmanuel Velazquez, DC# C02674, Suwannee Correctional Institution, 5964 U.S. Highway 90 Live Oak, Florida 32060.

*/s/ Margo E. L. Byrne*
Margo E. L. Byrne