UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Provided to Suwannee Correctional Institution on OCT 0 9 2025 for mailing, by PV

Emmanuel Velazquez,
Plaintiff,

v.                                    Case No: 3:24-cv-918-MMH-MCR

Thomas Allen, et al.,
Defendants.
_____/

## PLAINTIFF'S RESPONSE, AND AFFIRMATIVE COMPLAINT

Emmanuel Velazquez, Plaintiff pro se, comes forth with this "Responsive Motion" to Defendants' September 29, 2025, "Dispositive Motion". The Plaintiff will hereby demonstrate: ① How Plaintiff's constitutional rights were violated; ② How there was a procedural violation by Defendants to cover up the incident; and ③ Why Plaintiff should be entitled to compensatory and punitive damages.

## PRO SE LITIGANT STATEMENT

Plaintiff Velazquez is appearing pro se in this federal case without the professional legal representation or assistance of any lawyer or attorney. The Plaintiff is unskilled in the

1

Case No. 3:24-cv-918-MMH-MCR

science of civil law and, therefore, does not have the capacity to cite case laws or federal rules. Plaintiff is relying on the facts of this case and the truth.

## MATERIAL FACTS OF THE CASE

On September 9, 2022, at about 11:00 P.M. the Plaintiff was escorted to the Florida State Prison emergency room while this process was being recorded via handheld camera (See Document 24-1, page ID 136). Plaintiff had been hospitalized back in July 2022 (two months prior to the Defendants' aggravated assault), then Plaintiff had a doctor ordered iron infusion procedure at Regional Medical Center back in August 2022 (the month prior to the Defendants' aggravated battery). Plaintiff had seriously chronic healthcare issues with blood and sickle cell disease that required constant doctor screenings (See Doc. 24-2, pages ID: 608; 611; 648; 651).

While in the F.S.P. ER the handheld camera was turned off before Plaintiff could be safely escorted back to his assigned cell

2

Case No. 3:24-cv-918-MMH-MCR

and properly secured in it (See Doc. 24-5, pg. ID 719). When the handheld camera was turned off, Defendants Allen, Walin, and Williams took the Plaintiff to the infirmary shower which sits in a "blind spot" away from the fixed wing cameras. In the shower area, still in hand, waist, and leg restraints, the Plaintiff was struck on back of his head with a hard object by Defendant Walin. Plaintiff woke up on the shower floor with strikes to his face and head by Defendant Walin. At this time Defendant Walin strangled Plaintiff's neck using Defendant Walin's both bear hands until Plaintiff lost consciousness. Subsequently, Plaintiff regained his senses by way of more physical beatings by Defendant Allen who then also choked Plaintiff's neck while still on the floor of the shower and went unconscious again.

  At some point the Defendants had taken off the restraints from Plaintiff, and one of the Defendants threw a bar of soap to the Plaintiff saying, "Wash up good."

  After the shower, Defendants placed the Plaintiff back in full

3

Case No. 3:24-cv-928-MMH-MCR

restraints. And this is when Defendant Williams struck Plaintiff's body with fist blows to the ribs. That was the final attack by the Defendants. But Defendant Williams had told the Plaintiff, "Keep quiet or there will be more."

    Plaintiff was not treated or assessed for any injuries at the infirmary where the incident took place. After the infirmary, Plaintiff was escorted to cell B-1206 by two other "officers" who placed the Plaintiff in the cell and took turns striking Plaintiff across his face, then they both exited the cell. When the breakfast meal time came on September 10, 2022, Plaintiff was denied his food due to staff's failure to feed the Plaintiff.

    At some point before breakfast a medical nurse came to check up on Plaintiff but again Plaintiff's healthcare, and treatment of injuries from the infirmary shower incident, was denied due to Defendant Walin declaring falsely to the nurse, "He's okay."

    After the incident, the Plaintiff made numerous

4

Case No. 3:24-cv-918-MMH-MCR

medical complaints to get treatment. Plaintiff had submitted several Sick-Call forms (See Doc. 24-2, pages ID 617; 618; 619; 620; 657; 658; 659; 660), and several healthcare grievances (See Doc. 24-2, pages ID 604; 644).

    Plaintiff had been referred to the doctor for injuries associated from Defendants' aggravated assaults and batteries (See Doc. 24-2, pages ID 590; 591; 592; 594; 630; 631; 632; 634).

    Futhermore, Plaintiff received treatment for mental duress and emotional distress stemming from the incidents of September 9-10, 2022 (See Doc. 24-2, pages ID 191; 294).

<u>PLAINTIFF'S EIGHTH AMENDMENT WAS VIOLATED</u>

    The Plaintiff's Eighth Amendment to the U.S. Constitution was violated when Plaintiff received cruel and unusual punishments in the realm of evil and malicious intent to cause catastrophic harm by the Defendants. The inhumane acts of Defendant Thomas

5

Case No. 3:24-cv-918-MMH-MCR

Allen, Defendant Michael Walin, and Defendant Patrick Williams were so severe that, due to Plaintiff Emmanuel Velazquez's critical health concerns, the physical attacks could have resulted in death.

Plaintiff was assaulted and battered by all three Defendants in the presence of all three Defendants in the infirmary where Plaintiff wrongfully believed he would seek healthcare for his chronic medical issues.

### PROCEDURAL VIOLATION OCCURRED PRIOR TO THE INCIDENT

When the Plaintiff was in the Florida State Prison emergency room, prior to the incident, Plaintiff was being recorded via handheld camera. This camera was erroneously turned off before Plaintiff was secured in his cell.

The Defendants had then used the "blind spot" in the infirmary shower to cover up their aggravated attacks on the Plaintiff. Had that handheld camera not been turned off, prematurely

6

Case No. 3:24-cv-918-MMH-MCR

this incident would not have occurred, at least not in the blind area.

If that camera was recording, according to protocol, then there would have been footage of the incident in the infirmary shower by the Defendants, and footage of the other incident in cell B-1206 by the other officers.

## PHYSICAL INJURIES FROM THE INCIDENT

Plaintiff suffered through a multitude of injuries from the infirmary shower incident;

A. Head Injuries:

- lumps
- welts
- swollen

B. Face Injuries:

- bruised
- irritation

7

Case No. 3:24-cv-918-MMH-MCR

   -shattered teeth

C. Neck Injuries:

   -redness marks

   -aches and pains

D. Right Rib Injuries:

   -fracture

   -permanently disfigured

E. Right Hip Injuries:

   -dislocated

   -pains and aches

F. Right Knee Injuries:

   -frictional strain

   -arthritis

It should also be noted on record that Plaintiff lost consciousness several times during the Defendants' sadistical attacks. It is unfair and irrational for a Plaintiff, who was

8

Case No. 3:24-cv-918-MMH-MCR

unconscious throughout most or some of the abuse, to mention every injury sustained at the time.

However, the Plaintiff did take reasonable measures to seek medical assistance following Defendants' malicious attacks. Plaintiff risked further possible punishments, by making healthcare complaints, because of Defendant Williams' threat ("Keep quiet or there will be more."), and of Defendant Walin's intimidation by hindering a nurse from checking up on the Plaintiff ("He's okay.").

Plaintiff was initially assessed for injuries as a result from the incident (Doc. 24-2, page #617-620; #657-660). And that medical assessment was referred to the healthcare provider (Doc. 24-2, page #590-592; #594; #630-632; #634). The doctor had ordered "X-Ray" exams because human vision, even with a medical degree, alone cannot accurately evaluate certain injuries like the ones Plaintiff sustained in this case (head trauma and fractured ribs, which are both internal).

9

Case No. 3:24-cv-918-MMH-MCR

Moreover, Plaintiff has long term mental and emotional damages, as additional outcomes, relating to Defendants' actions, that require psychological treatment. As of October 2025, the Plaintiff has been a patient of a Mental Health Unit.

## CONCLUSION

The Defendants' version of what transpired, from when Plaintiff was in the emergency room to when Plaintiff was placed in cell B-1206, leaves a lot of blank answers to unveil:

First, Why was the handheld camera "turned off" before Plaintiff could be secured in a cell?

Second, Why did it take "three" officers (the named Defendants) to escorted an inmate (the Plaintiff in this case) in full hand, waist, and leg restraints?

Third, Why did the Defendants take the Plaintiff to the infirmary shower?

Fourth, Why wasn't any video footage preserved?

10

Case No. 3:24-cv-918-MMH-MCR

WHEREFORE, for the stated reasons and conclusionary questions, Plaintiff seeks the Court to proceed this case to a jury trial for all triable facts.

RESPECTFULLY SUBMITTED,

/s/ Emmanuel Velazquez
Pro Se Plaintiff

Emmanuel Velazquez #C02674
Suwannee-C.I.-M.H.U.
5964 HWY 90
Live Oak, FL 32060

11

Case No. 3:24-cv-918-MMH-MCR

## CERTIFICATE OF SERVICE

I Hereby Certify that a true and correct copy of the foregoing "Plaintiff's Response" was furnished by U.S. Mail to: ① U.S. District Court, Middle District of Florida, Jacksonville Division, U.S. Courthouse, Room 2-194, 2110 First Street, Fort Myers, FL 33901, and to; ② Margo E.L. Byrne, Esq., Assistant Attorney General, Office of the Attorney General, The Capitol, PL-01, Tallahassee, FL 32399.

DATE: October 9, 2025        /s/ Emmanuel Velazquez
                              Emmanuel Velazquez
                              Plaintiff