UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EMMANUEL VELAZQUEZ,

Plaintiff,

v.

Case No. 3:24-cv-918-MMH-SJH

SERGEANT ALLEN,
SERGEANT WILLIAMS, and
SERGEANT MICHAEL WALIN,

Defendants.

---

**ORDER**

Plaintiff Emmanuel Velazquez, a convicted state prisoner, sues for federal civil rights violations under 42 U.S.C. § 1983 and proceeds in forma pauperis on his Amended Complaint (Doc. 5; Amended Complaint). Generally, Velazquez alleges that correctional officers at Florida State Prison used excessive force while escorting him to the medical unit shower on September 10, 2022. See generally id.

In his Amended Complaint, Velazquez sues three correctional officers in their individual capacities: Sergeants Thomas D. Allen, Patrick A. Williams, and Michael Walin.[1] This matter is before the Court on Defendants' Motion for

---

[1] In his Amended Complaint, Velazquez incorrectly names Defendant Michael Walin as "Officer Wallace." Doc. 5 at 3. An earlier order grants Defendants' unopposed

Summary Judgment (Doc. 24). Velazquez filed his Response (Doc. 27). And Defendants filed a Reply (Doc. 28). The motion is ripe for review.

## I. Velazquez's Allegations

In his Amended Complaint, Velazquez alleges that on September 10, 2022, at about 12:15 a.m., Defendants Allen, Williams, and Walin escorted him to the medical unit shower at Florida State Prison. Doc. 5 at 6. He asserts that all three defendants attacked him: Allen struck his face, Walin strangled him until he passed out, and Williams fractured his ribs with a closed fist punch. Id. He contends that Walin struck him "behind his head" with an unknown object and that he was unconscious through most of the beating. Id. According to Velazquez, he suffered contusions and swelling on the back of his head, bruising and abrasions on his neck, one or more lower right ribs fractured or dislocated, and broken teeth. Id. He also alleges that after the attack, Williams threatened him to "keep quiet." Id.

Velazquez contends that Defendants' conduct constitutes excessive force and violates his Eighth Amendment rights.[2] Doc. 5 at 4. He seeks to recover

---

motion to correct the misnomer and directs the Clerk to correct the docket to reflect Defendant's correct name as "Michael Walin." Doc. 17 at 5.

[2] An earlier order directed Velazquez to notify the Court whether he intended to pursue an additional claim that he was denied adequate medical care and afforded him an opportunity to file a second amended complaint. Doc. 9. Velazquez notified the Court that he intended to pursue only an excessive force claim against the three named Defendants, and he filed no second amended complaint. Doc. 10.

compensatory and punitive damages for physical injuries, mental anguish, and emotional distress. Id.

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits for declarations, stipulations (including those made for purpose of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[3] An

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment options." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022), see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (citations and quotations omitted).

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must

view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## III. Summary of the Arguments and Evidence

### A. Defendants' Argument and Evidence

Defendants Allen, Williams, and Walin move for summary judgment and argue that Velazquez cannot prove an Eighth Amendment violation because the undisputed evidence clearly contradicts his allegations. Doc. 24. They contend that Velazquez suffered no injuries besides self-inflicted wounds and they used the least amount of force when escorting Velazquez to the medical unit shower. Id.[4]

In support of their motion, Defendants submit the following evidentiary materials: Defendant Walin's Incident Report and attached medical records (Doc. 24-1); the declaration of Kellie Caswell, a Florida Department of

[4] Because the Court concludes that Defendants are entitled to summary judgment on Velazquez's Eighth Amendment claim, the Court need not consider Defendants' additional arguments that Valezquez is entitled to neither compensatory nor punitive damages.

Corrections ("FDOC") Legal Nurse Consultant, and Velazquez's attached prison medical files (525 pages) (Doc. 24-2); the transcript of Velazquez's deposition (Doc. 24-3); Velazquez's responses to Defendants' Interrogatories (Doc. 24-4); the FDOC MINS Incident Report (Doc. 24-5); and the declaration of Jeffrey McClellan, an Assistant Warden at Florida State Prison (Doc. 24-6). These evidentiary materials, viewed in the light most favorable to Velazquez, demonstrate the following:

On September 9, 2022, at approximately 10:38 p.m., Sergeant Michael Walin observed Velazquez unresponsive in his cell. Doc. 24-1 at 1 (Walin's Incident Report). Walin requested medical staff, an officer in charge, and the Alpha response team to respond for Velazquez's medical emergency. Id. While another sergeant operated a handheld video camera,[5] Walin breached Velazquez's cell door with the Alpha response team, which included Defendant Allen and other officers, as well as medical personnel. Id.

[5] The record contains no video recording of the incident. Defendants explain that a sergeant operated a handheld video camera, which recorded Velazquez being escorted to the medical unit, to the medical unit shower, and back to his cell. Doc. 24-1 at 1; Doc. 24-5 at 5. Defendants explain that "for obvious privacy reasons, there is no camera recording in the shower." Doc. 28 at 3. However, the FDOC did not retain the video recording after its Inspector General's investigation concluded that Velazquez's grievance allegations lacked evidentiary support. Doc. 24 at 3, n. 1. Additionally, Jeffrey McClellan, Assistant Warden at Florida State Prison, declares that no video recordings of the incident were retained after the prison's 30-day retention period. Doc. 24-6 at 1.

Once Velazquez was fully restrained, he was placed on a stretcher and delivered to the medical unit where he received a medical assessment by nurses. Id. at 1 and 4. Nurse Mae Harrold observed that (1) Velazquez was "not unresponsive [but] just would not answer the officers[;]" (2) there was a large amount of blood in the cell and in the toilet, and there was no blood on the bed; and (3) there was blood all over Velazquez's upper torso but its origin could not be determined. Id. at 4. Velazquez was then sent to the shower to clean off the blood. Id.

When Velazquez returned to the clinic from the shower, medical personnel observed four small puncture wounds, which measured approximately two centimeters, on his torso under his right arm. Doc. 24-1 at 1. Nurse Harrold asked Velazquez why he did this, and he responded, "I don't know." Id. at 4. The nurse observed that "it appears that the inmate was collecting blood in cups and putting water in the cups to make it seem like there was more blood than it really was." Id. Nurse Collins cleaned Velazquez's torso and reported "no bleeding." Id. at 5. Velazquez was given a referral for mental health treatment and was returned to his cell without further incident. Id. Nurse Collins noted that Velazquez would be checked at 2:00 a.m. Id.

Four days later, on September 13, 2022, Velazquez submitted a "sick call" and was evaluated for what he claimed was a physical altercation. Doc. 24-2 at 473–74 (Velazquez's medical records). He complained of a headache,

rib pain, bruised eyes, facial swelling, shortness of breath, and right hip pain. Id. at 473. He reported that his pain was "everywhere" and rated his pain as 9 out of 10. Id. at 474. After assessing Valezquez's condition, the medical provider documented that Velazquez was able to ambulate and lift his shirt and had "full range of motion." Id. The medical provider further reported that Velazquez had "no swelling or bruising to [his] face or ribs/ abdomen," "no redness to the area [where] he said he had pain," and "no deformity present anywhere." Id. Velazquez was given Tylenol for pain and discharged to his cell. Id.

Approximately two weeks later, on September 29, 2022, Velazquez again was seen in the medical clinic. Doc. 24-2 at 460. He reported that he suffered "staff abuse" on September 9, 2022. Id. He refused to be assessed, but medical personnel reported that he was alert and ambulatory. Id. Velazquez was discharged to his cell without treatment. Id. Velazquez's medical records contain no additional documents related to the incident. See generally Doc. 24-2.

On September 28, 2022, Velazquez filed a grievance in which he complained that he was "taken on a stretcher to medical room while a handheld camera was recorded" but that the "handheld camera was turned off" before the three Defendants escorted him to the shower and physically attacked him.

Doc. 24-5 at 3 (FDOC MINS Incident Report). The Incident Report documents the following (id. at 5–6):

> [A] camera review was conducted and shows inmate Velazquez enter the clinic. Once in the clinic, Inmate Velazquez enters the medical exam room and multiple staff members are seen entering and exiting the medical exam room. Inmate Velazquez is then escorted to the shower and then escorted back to his assigned cell. At no time during the camera review does Inmate Velazquez seem to be under duress. Inmate Velazquez was provided a witness statement to which he refused to provide further information. Inmate Velazquez was afforded the opportunity to be seen by medical to which he refused. The video recording was downloaded to the USB drive assigned to the Colonel's area.

Ultimately, the Office of the Inspector General concluded that "there is no evidence to substantiate the allegations being made." Id. at 6.

**B. Velazquez's Argument and Evidence**

Velazquez responds in opposition to Defendants' summary judgment motion and attempts to raise new claims. Doc. 27. He argues that at around midnight on the morning of September 10, 2022, he was escorted to the prison's medical unit shower because of complications due to his sickle cell disease. Id. at 2. According to Velazquez, a responding officer was recording with a

handheld camera, but the "camera was erroneously turned off" before Defendants beat him in the medical unit shower.[6] Id. at 6.

In order to show there is a genuine issue for trial, Velazquez files no additional evidentiary materials, and instead, points to specific documents already in the record. Specifically, Velazquez emphasizes medical records that document his chronic sickle cell disease.[7] Additionally, Velazquez testified that he suffers from sickle cell anemia and occasionally experiences weakness and dizzy spells. Doc. 24-3 at 11 (Velazquez deposition).

Velazquez argues that after he arrived in the medical unit, a responding officer turned off his handheld camera, and Defendants Allen, Williams, and Walin escorted him to the shower. Doc. 27 at 2. Velazquez testified that the shower was located approximately 20 to 30 feet from the medical clinic. Doc.

---

[6] Additionally, Velazquez argues that (1) after he returned to his cell from the medical unit, two additional officers who are not parties to this case beat him (Doc. 27 at 4) and (2) he was denied medical care and food (id. at 4–5). However, these additional allegations of excessive force and denial of food and medical care are not properly before the Court. When Velazquez elected not to file a second amended complaint, he abandoned any claim of denial of medical care and any claim against officers other than the named Defendants. Doc. 10.

[7] Velazquez emphasizes his medical history of anemia and sickle cell disease in order to show that he required medical care on the evening in question not because he had engaged in self-harm but because he was experiencing complications due to this condition. The Court independently reviewed all 525 pages of Velazquez's prison medical records. The records confirm that "sickle cell trait" and "microcytic hypochromic anemia" are two of Velazquez's "Current [Medical] Problems." See e.g., Doc. 24-2 at 25–26, 56, 60, 463–65. However, the record fails to suggest whether Velazquez required medical attention on the evening in question because of a medical event related to a chronic blood disorder, or injuries caused by self-harm, or both.

24-3 at 13. As Velazquez entered the shower, both his hands and feet were restrained. Id. at 14. Once he was in the shower, Velazquez testified, Defendant Walin approached him from behind and, instead of removing his restraints, hit him with an unknown object, knocking him unconscious. Id. at 14–15. While he was restrained and on the shower floor, Walin and Allen choked him and hit him in the face. Id. at 16. Defendants continued to beat and choke Velazquez until he "passed out a number of times." Id. at 15. After Velazquez regained consciousness, one of the defendants threw soap at him and told him to clean up. Id. Williams beat him in his ribs and threatened him to keep quiet. Id. at 16. Defendants removed the restraints, and Velazquez was able to shower. Id. at 17.

After he showered, Velazquez returned to the medical unit, and the nurse checked his vitals. Id. at 18. He received no treatment and was returned to his cell without further incident.[8] Id. A few hours later, Walin and a nurse visited Velazquez in his cell to check on his condition. Id. at 23–25. When the nurse asked Velazquez if he was o.k., Defendant Walin would not allow him to

[8] In his response to Defendants' summary judgment motion, Velazquez argues that, after his initial medical assessment, he was referred to a doctor who ordered x-ray exams to accurately evaluate the internal damages he suffered because of the incident, including head trauma and fractured ribs. Doc. 27 at 9. However, the records Velazquez points to do not support this contention. Rather, the records show that in October 2022, Velazquez was seen for a Chronic Care Consult. Doc. 24-2 at 446–51; 486–91. During this visit, he complained of pain due to a rod in his knee and was referred for an x-ray. Id. These records lack any reference to injuries allegedly sustained during the September 10, 2022, incident.

respond. Id. at 25. Velazquez continues to experience pain in ribs on his right side. Id. at 19. He has received ibuprofen for the pain. Id.

## IV. Applicable Law

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). However, it is well understood that prison guards, who are charged with maintaining order and security, may use force when necessary to bring unruly inmates into compliance. Whitley v. Albers, 475 U.S. 312, 320–21 (1986); Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991).

In Sconiers v. Lockhart, 946 F.3d 1256, 1265 (11th Cir. 2020), the Eleventh Circuit reviewed "the principles applicable to Eighth Amendment excessive-force" claims:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." Hudson v. McMillian, 503 U.S. 1, 5 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. Id.
>
> . . . "[T]he core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or

> maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37.[9] This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8.
>
> With respect to the subjective element, "to have a valid claim . . . the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).
>
> As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," Hudson, 503 U.S. at 8, or "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37–38. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary." Wilkins, 559 U.S. at 37.

Id. at 1265–66 (internal citations cleaned up).

---

[9] Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam).

Regardless of the type of force involved, courts consider five distinct factors when determining whether an officer applied force maliciously and sadistically for the purpose of causing harm:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7). Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid.[10] (quoting Whitley, supra, at 321, 106 S.Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. . . . An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[11]
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does

---

[10] Hudson, 503 U.S. at 7.

[11] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

> not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37–38. Nevertheless, a prisoner's injuries or lack thereof may be "evidence of the kind or degree of force that was used by [an] officer." Charles v. Johnson, 18 F.4th 686, 700 (11th Cir. 2021) (citing Crocker v. Beatty, 995 F.3d 1232, 1251 (11th Cir. 2021)).

In considering the Whitley factors, courts must "give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). Moreover, corrections officials are not required to "convince every inmate that their orders are reasonable and well-thought out," and "[c]ertainly . . . are not required to do so where an inmate repeatedly fails to follow those orders." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), overruled in part on other grounds as recognized by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). As such, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." Whitley, 475 U.S. at 322. A case should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the

plaintiff, will support a reliable inference of wantonness in the infliction of pain." Id.

## V. Analysis

The Court cannot conclude that the evidentiary materials on file, viewed in the light most favorable to Velazquez, demonstrate an Eighth Amendment violation such that a jury could reasonably find in Velazquez's favor. The record establishes, and the parties agree, that Defendant Walin observed Velazquez unresponsive in his cell. Doc. 24-1 at 1. Officers and medical personnel responded to Velazquez's cell and transported him on a stretcher from his cell to the medical unit for assessment. Id. After initial assessment in the medical unit, the undisputed record shows that all three Defendants escorted Velazquez to the shower. Doc. 24-3 at 12–17; Doc. 24-5 at 3. It is here that the parties' accounts differ on material facts. Velazquez alleges that, in the shower, he was beaten by Defendants outside the view of any camera. Doc. 27 at 3. Defendants, on the other hand, dispute altogether that they beat Velazquez and argue that this was not a use-of-force event, but rather, a medical emergency in which they used "no forceful response." Doc. 24 at 10.

### A. Velazquez's claim is contradicted by the record.

The problem for Velazquez is that no evidence—other than his own deposition testimony—supports the contention that Defendants beat him in the medical unit shower. In fact, his claim is affirmatively contradicted by the

record. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Perez v. Suszczynski, 809 F.3d 1213, 1221 (11th Cir. 2016) (same); Singletary v. Vargas, 804 F.3d 1174, 1183 (11th Cir. 2015) ("[W]hen the non-movant's assertion is so utterly discredited by the record, no genuine dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant.") (quotations omitted).

When asked whether anyone witnessed the attack, Velazquez testified that nurses and medical staff "probably heard . . . the commotion of [him] being beaten down." Doc. 24-3 at 8. However, the medical providers' reports do not substantiate Velazquez's allegation of an unprovoked, brutal attack in the shower. Doc. 24-1 at 1–5. Instead, medical personnel determined that Velazquez had engaged in self-harm in his cell. Nurse Harrold observed that Velazquez arrived at the medical unit with blood covering his torso, and once he returned from the shower, four small puncture wounds were discovered on his torso under his right arm. Doc. 24-1 at 1. Nurse Collins observed that once Velazquez's torso was cleaned there was "no bleeding." Id. at 5. Neither nurse observed any bruising or injuries consistent with the attack that Velazquez alleges. To the contrary, Nurse Harrold concluded that Velazquez engaged in

self-harm in his cell and "was collecting blood in cups . . . to make it seem like there was more blood than it really was." Id. at 1. Velazquez was returned to his cell without further treatment or incident. Id.

Velazquez's two subsequent visits to the medical unit similarly do not support—and instead, contradict—his story of an attack in the shower. Four days after the incident, Velazquez complained of pain "everywhere," but the medical provider documented that he was able to ambulate with "full range of motion" and had "no swelling or bruising" and "no deformity present anywhere." Doc. 24-2 at 473–74. When he returned to the medical unit two weeks later again complaining of "staff abuse," Velazquez refused to be assessed. Doc. 24-2 at 460. Medical personnel documented that he was alert and ambulatory, and he was discharged without treatment. Id. Therefore, Velazquez's story of an unprovoked attack in the shower simply does not align with records that show he suffered only self-inflicted puncture wounds that required no medical attention.

Additionally, Velazquez's suggestion that a handheld camera was turned off in order to facilitate Defendants attacking him in the shower is clearly contradicted by the record and affords him no support. Velazquez complained in his grievance that he was "taken on a stretcher to a medical room while a handheld camera was recorded" but that the "handheld camera was turned off" before the three Defendants escorted him to the shower and attacked him. Doc.

24-5 at 3. However, the FDOC MINS report confirms that a review of the recording was conducted, and the recording showed that Velazquez was "escorted to the shower and then escorted back to his assigned cell" and that "[a]t no time . . . does Inmate Velazquez seem to be under duress." Id.

Finally, no evidence suggests why Defendants would engage in an unprovoked beating. In fact, Velazquez testified that before the September 10, 2022, incident, he had no altercations or incidents with Defendants. Doc. 24-3 at 8. And, when asked whether anything "happened earlier in the day that may have prompted this attack," Velazquez responded "no" and suggested Defendants "just didn't feel like working." Id. at 21.

If this case were to proceed to trial, Velazquez would have only his own testimony that Defendants beat him for the sole purpose of inflicting pain. Given the record in this case, such unsubstantiated allegations constitute no more than a "mere scintilla of evidence" upon which no reasonable jury could find in his favor. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."). Indeed, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Here, based on the evidentiary materials submitted by Defendants, and Velazquez's failure to

point to any evidence other than his own testimony, which is inconsistent with the record, no reasonable jury could find in his favor on his allegation of excessive force in the medical unit shower.

**B. The Whitley factors balance in Defendants' favor.**

Moreover, affording Defendants Allen, Williams, and Walin "a wide range of deference" in maintaining prison security, the relevant[12] Whitley factors balance in their favor. The first factor—the extent of Velazquez's injuries (or lack thereof)—weighs against a finding of an Eighth Amendment violation. The record shows that Velazquez was evaluated by medical personnel after returning from the shower and was found to have no injuries other than four self-inflicted puncture wounds. Doc. 24-1 at 1. The record establishes that neither the puncture wounds nor any other medical condition—no matter the cause—required medical intervention, and Velazquez was returned to his cell with only a referral for mental health treatment. Id.

When Velazquez returned to the medical clinic four days later complaining of pain "everywhere," the medical provider reported "no swelling or bruising," "no redness," and "no deformity present anywhere," and Velazquez was issued only Tylenol for his pain. Doc. 24-2 at 473–74.

[12] The fourth Whitley factor—the efforts made to temper the severity of a forceful response—is not relevant to the issues presented here.

Velazquez's full medical file contains no additional records related to the incident nor any records documenting the alleged injuries. Accordingly, the record shows that the force Defendants used in escorting Velazquez to the shower did not result in any discernable injury that required medical intervention. See Wilkins, 559 U.S. at 38 (explaining that a "push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim") (quotations omitted); see also Charles, 18 F.4th at 700 (explaining that minor injuries "can be evidence of the kind or degree of force that was used by the officer").

Similarly, the second and third factors—the need for force and the relationship between that need and the amount of force used—also weigh against a finding of an Eighth Amendment violation. The record shows there was a need for an officer to intervene in order to maintain order and security because Defendant Walin observed Velazquez unresponsive in his cell and experiencing a medical emergency. Doc. 24-1 at 1; see also Whitley, 475 U.S. at 320– 21. A team of officers and medical staff responded to Velazquez's cell and transported him on a stretcher to the medical unit. Doc. 24-1. The record shows there was a need for Velazquez to shower because he arrived in the medical unit with blood covering his torso and medical personnel could not determine from where it originated. Id. Defendants' conduct of responding to Velazquez's medical emergency by escorting him first to the medical unit and

next to the medical unit shower was necessary to respond to Velazquez's medical emergency and did not constitute force that is inflicted "maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37. Importantly, there is no evidence—other than Velasquez's uncorroborated deposition—to show that Defendants used any more force than necessary to respond to Velasquez's medical emergency. Instead, the record evidence shows that he was returned to his cell without any further use of force or medical intervention.

Finally, the fifth factor—the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials—weighs against a finding of an Eighth Amendment violation. The record shows that only Velazquez's health and safety were threatened during his medical emergency, and no other inmates were involved. Because Velazquez arrived at the medical unit with blood covering his torso, Defendants reasonably perceived a need to escort Velazquez to the shower in order to facilitate a proper medical assessment.

Focusing on "the core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and considering all the evidence, the Court concludes that Velazquez does not point to evidence reasonably suggesting Defendants Allen, Williams, and Walin used force maliciously or sadistically to cause him harm. See Hudson, 503 U.S at 7.

## VI. Conclusion

On review of the entire record in the light most favorable to Velazquez, the Court concludes that no reasonable jury could find in favor of Velazquez on his claim that Defendants applied excessive force against him while escorting him to the medical unit shower. As such, Defendants are entitled to summary judgment in their favor.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 24) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Sergeants Thomas D. Allen, Michael Walin, and Patrick A. Williams, to terminate any pending motions, and to **CLOSE** the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of September, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

TpaP-5
C: Emmanuel Velazquez, C02674
Counsel of Record